643 F.2d 1300
 John P. GUZZARDO, Petitioner-Appellant,
v.
Paul J. BENGSTON, Sheriff of Winnebago County, Illinois, and
Honorable John W. Nielsen, Judge, 17th Judicial
Circuit, Winnebago County, Illinois, Respondents.
 No. 80-1696.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 25, 1980.
Decided March 13, 1981.
 
 Donald S. Eisenberg, Madison, Wis., for petitioner-appellant.
 Jonathan Strauss, Chicago, Ill., for respondents.
 
 
 1
 Before SPRECHER and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*
 
 
 2
 WILLIAM J. CAMPBELL, Senior District Judge.
 
 
 3
 John P. Guzzardo appeals from the District Court's entry of summary judgment on his petition for habeas corpus relief. Guzzardo's petition raised three Constitutional issues. He claims he was denied his right to confrontation under the Sixth and Fourteenth Amendments; that his trial counsel was so ineffective as to fall below the minimum standard of representation required under the Sixth Amendment; and that the statute upon which his conviction rests is unconstitutionally vague on its face. The District Court found petitioner's arguments meritless and entered summary judgment denying the writ. We affirm.
 
 
 4
 Petitioner was convicted of pandering, in violation of Illinois Rev.Stat. Ch. 38 § 11-16 (1975). That statute provides that anyone who "arranges or offers to arrange a situation in which a person may practice prostitution" commits pandering, a Class 4 felony. Rockford Police first suspected petitioner when a Ms. Robbins, a prostitution suspect, made certain remarks suggesting that prostitution was ongoing at the "Naughty Lady Lounge," which was owned by petitioner. These remarks were made to Detective Gulbranson who filed a routine report of the conversation.
 
 
 5
 Shortly thereafter Rockford Police were interviewing a Ms. Wooten regarding prostitution activities in the area. She implicated petitioner in organizing prostitution at a Rockford hotel. Police asked Wooten to meet with the petitioner at his bar and tape-record the conversation. Wooten agreed to do so. While the tape-recording proved inaudible, Wooten testified at trial that petitioner offered to provide her with a room at a local hotel to practice prostitution in return for a payment of $5.00 per customer.
 
 
 6
 Prior to trial, the trial court conducted a brief hearing to resolve certain evidentiary questions. The State sought to introduce Detective Gulbranson's testimony relating to his earlier conversation with Ms. Robbins regarding prostitution at the Naughty Lady Lounge. The Court permitted testimony solely on the fact that a conversation had taken place and a report filed, but not on the substance of the conversation.
 
 
 7
 At trial the following colloquy between the prosecutor and Gulbranson took place:
 
 
 8
 Question: An informal report about what?
 
 
 9
 Gulbranson: About her conversations.
 
 
 10
 Question: What was the purpose in leaving that report? (objection overruled)
 
 
 11
 Gulbranson: It was reference (to) prostitution inside the building.
 
 
 12
 Question: What was your purpose in leaving the report?
 
 
 13
 Gulbranson: To be followed up on.
 
 
 14
 Defense counsel immediately moved for a mistrial, which was denied. The Court did, however, instruct the jury to disregard the remark about prostitution.
 
 
 15
 Petitioner contends that Gulbranson's remark was, in effect, a hearsay summary of what Robbins had told him about the Naughty Lady Lounge. Since Robbins was not a witness at trial, there was no opportunity for defense counsel to cross-examine her. That petitioner argues, is a denial of his Sixth Amendment right to confront the witnesses against him.
 
 
 16
 Errors in State trials arising out of the admission of hearsay statements are not grounds for Federal habeas relief absent a showing of deprivation of a specific due process right. U. S. ex rel. Serrano v. Smith, 394 F.Supp. 391 (D.C.N.Y.1975). In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Court held that the Sixth Amendment right to confrontation was a fundamental constitutional right, applicable to the states under the due process clause of the Fourteenth Amendment. 380 U.S. at 405, 85 S.Ct. at 1068. In Pointer the State introduced the transcript of a preliminary hearing into evidence. At that hearing the victim identified the defendant as the man who had robbed him. Pointer had not been represented by counsel at the hearing and made no attempt to cross-examine his accuser. The Court found that the introduction of the transcript denied Pointer of his right to confrontation and rendered the trial fundamentally unfair.
 
 
 17
 Petitioner relies on Pointer and Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in support of the claim of denial of his right to confrontation. In Davis the trial court entered a protective order which prevented defense counsel from questioning the prosecution's key witness about his prior criminal record on the same charge as the defendant, and about the witness' incentive to fabricate a story to protect himself and gain favor with the police. The remark by Detective Gulbranson was hearsay and was not admissible evidence. Yet, it is hardly on the same level of prejudice as was found in Pointer or Davis. Even assuming the jury ignored the curative instruction and considered the remark, it would have only confirmed what could be reasonably inferred from Gulbranson's other testimony. Gulbranson testified that his conversation with Robbins prompted him to file a report for future investigation. Since there was direct evidence that petitioner was involved with prostitution, the jury could have reasonably inferred that Gulbranson's initial report made some form of reference to prostitution based on something said by Robbins. Petitioner was represented by counsel who was permitted to cross-examine Gulbranson regarding his reasons for filing his report. Due process does not require that the defendant be afforded an opportunity to cross-examine every person about whom the jury might draw an inference which is adverse to the defendant. Gulbranson's hearsay remark was not so prejudicial as to render the trial fundamentally unfair.
 
 
 18
 Petitioner also asserts a denial of his right to confrontation resulting from the prosecutor's opening statement. In his opening remarks the prosecutor summarized what he expected the witness Wooten to say on direct examination. He told the jury:
 
 
 19
 (Ms.) Wooten then will testify regarding her knowledge of the defendant, John Guzzardo. She will tell you how long she has known him. She will tell you how many times she had occasion to be in his company. And, she will tell you what has occurred as a result. She will make reference to an incident during the summer of 1976, where she, at the request of John Guzzardo, met him at (a Rockford Hotel) ... and received from him $20 to engage in an act of prostitution with a man at the and entered into an act of prostitution with a man at the ... Hotel." (Tr. 29-30)
 
 
 20
 Petitioner's counsel objected to these comments, and the trial judge instructed the jury not to consider opening statements as evidence. When the State attempted to elicit this testimony from Ms. Wooten, defense counsel objected to the testimony on the grounds that it was evidence of prior bad acts indicating only a propensity to commit crimes. The trial judge sustained the objection and did not permit further inquiry into the prior incident.
 
 
 21
 Petitioner claims that his right to confrontation was denied as a result of his counsel's inability to cross-examine Ms. Wooten about her earlier contact with petitioner. The jury knew about the incident due to the prosecutor's opening remark, yet defense counsel was unable to cross-examine Ms. Wooten regarding the incident as a result of the Court's evidentiary ruling during direct examination. Petitioner does not claim prosecutorial misconduct. Petitioner's argument on this point hinges entirely on the confrontation clause as an ingredient of due process.
 
 
 22
 In analyzing State Court proceedings by way of § 2254 review, Federal Courts must distinguish between that error which is so prejudicial as to deny the petitioner fundamental due process of law, and that which does not. See Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). The instant case falls into the latter category. The jury was instructed that it was to consider only the evidence introduced at trial, and that the remarks of counsel were not evidence. In Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the Court held that a similar summary of evidence in the State's opening statement did not so prejudice the jury as to deny petitioner a fair trial even when the State failed to elicit the summarized testimony during the course of the trial. Mr. Justice Marshall noted:
 
 
 23
 ... here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. 394 U.S. at 736, 89 S.Ct. at 1423.
 
 
 24
 While a remark during an opening statement could be so prejudicial as to taint the entire trial, this is not such a case. The prosecutor's inaccurate summary of Ms. Wooten's testimony does not warrant federal habeas relief.
 
 
 25
 Petitioner next attacks the Illinois pandering statute as unconstitutionally vague on its face. He contends that due process requires greater specificity as to what the law forbids than this statute affords. Petitioner relies on Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605, in which the Court reversed a conviction based on a Massachusetts statute which prohibited "treating contemptuously the Flag of the United States." In that case the defendant was convicted of violating the statute for wearing a small cloth flag sewn to the seat of his trousers. In reversing the conviction on vagueness grounds the Court noted that a greater degree of specificity is required when First Amendment rights are affected. 415 U.S. at 572-73, 94 S.Ct. at 1246-47. See also Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).
 
 
 26
 The Illinois pandering statute does not infringe on the exercise of one's freedom of expression. Thus, all that the statute need do is provide fair notice to a person of ordinary intelligence that his contemplated conduct is forbidden. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The doctrine of vagueness is based on the notion of fairness. No man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. Colton v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).
 
 
 27
 The language of the Illinois pandering statute gives a person of ordinary intelligence adequate notice as to what conduct the statute proscribes. The term "arrange a situation in which a female may practice prostitution" evokes a rather clear image of what the legislature had in mind when the statute was enacted. Petitioner's vagueness challenge is without merit.
 
 
 28
 Petitioner's final contention is that he was denied effective assistance of counsel. This argument centers on four alleged omissions by petitioner's trial counsel: (1) failure to voir-dire Detective Gulbranson; (2) failure to call Officer Bart to the stand to impeach Ms. Wooten's testimony as to her immunity from prosecution; (3) the failure to request alternative instructions to the jury as to the weight and credibility of the testimony of an accomplice; and (4) the failure to call petitioner as a witness in his own defense.
 
 
 29
 The State argues that petitioner has waived the right to pursue this issue in the Federal Courts by failing to present the issue on direct appeal in the State courts. Under Ill.Rev.Stat., Ch. 38 § 122-1 et seq. (1979), allegations of incompetent counsel based on the record must be raised on appeal or are deemed res judicata in subsequent Illinois post-conviction proceedings. Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149, and Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 383 (1977), require a habeas petitioner who bypasses state procedural rules to show cause why he did so and prejudice resulting from that deliberate bypass. Francis v. Henderson involved a State contemporaneous objection rule which the petitioner in that case failed to observe. In Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 383 (1977), the Court extended the Francis holding to the failure to object to the admission of a confession at trial. In order to attack the admission of the confession on habeas review, the petitioner was required to meet the cause and prejudice test.
 
 
 30
 The procedural bar raised by the State in the instant case is different from the contemporaneous objection requirements asserted in Francis and Sykes. An ineffective assistance of counsel claim is by its very nature a post-trial assertion. It can be argued that a State's rule governing post-trial procedures is entitled to the same deference by Federal Courts as a State contemporaneous objection rule. Nevertheless, such a holding would clearly be an extension of Francis and Sykes which we decline to undertake in this case. We believe the District Court correctly decided the ineffective assistance of counsel claim on the merits and we prefer to resolve petitioner's contention on the merits as well.
 
 
 31
 A petitioner asserting a lack of effective assistance of counsel in a criminal case must prove that his counsel's performance did not meet a minimum standard of professional representation. U. S. ex rel. Ortiz v. Sielaff, 542 F.2d 377, 379 (7th Cir. 1976). The points raised by petitioner as evidence of ineffective representation reflect speculation and hindsight as to how petitioner's defense might have been improved. The voir dire of Detective Gulbranson might have revealed that the prosecutor had informed the witness as to the limited scope of his direct examination. Petitioner apparently believes that would have laid a foundation for a mistrial when Gulbranson testified that prostitution was the subject of his initial report. Such reasoning can only be characterized as speculation as to what might have happened if a number of variables had occurred. The failure to request the voir dire is not ineffective representation.
 
 
 32
 The remaining omissions raised by petitioner relate to tactical trial decisions, the wisdom of which we can only speculate on. Calling the petitioner as a witness could, for example, have proven to be a grave error on cross-examination. A minimum standard of professional representation does not mean representation free of questionable tactical decisions or even what hindsight might suggest were mistakes. It means representation without serious prejudicial blunders which have foreseeable adverse consequences. Implicit in the Sixth Amendment right to counsel in criminal cases is the notion of adequacy.
 
 
 33
 Our reading of the record reveals representation which was certainly adequate. Petitioner's trial counsel aggressively defended his client and provided competent legal representation.
 
 
 34
 For these reasons we conclude the District Court's entry of summary judgment denying habeas corpus relief should be affirmed.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation